DONOVAN, Administrator, Respondent, vs. HOENIG and another, Appellants.

*April 11—May 1, 1914.*

*Vendor and purchaser: Failure to perfect title: Reasonable time: Recovery of money paid and deposited in escrow: Interest.*

1. Where, under a contract for the sale of land made on August 24th, a part of the purchase price was paid to the vendor and the remainder was, by agreement, on August 30th deposited in a bank to be held, with the deed, until the vendor should perfect his title if he could do so within a reasonable time, otherwise to be returned to the purchaser, such reasonable time had elapsed prior to November 16th and, the title not then having been perfected, the purchaser could refuse to accept the deed and recover the money paid as well as that deposited.

2. It appearing in such case that negotiations continued until some time in October and that if the title could then have been made good the purchaser would have accepted the deed, although he had theretofore demanded back the money, a recovery of interest on the amount deposited is allowed only from November 16th, the date of the commencement of the action.

APPEAL from a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Modified and affirmed.*

This action was brought to recover $1,450 which was the consideration named in an executory contract for the sale of certain real estate made between the plaintiff's intestate, as vendee, and the defendant *Hoenig,* as vendor. Fifty dollars was paid down at the time of the making of the contract, and six days later the balance of the purchase money was placed in the hands of the defendant bank to be turned over to *Hoenig* if he should within a reasonable time clear the title of the property. The plaintiff alleges that the defendant failed to do this, and hence brings this action seeking to recover back $1,400 from *Hoenig* and the bank jointly, and the remaining $50 from *Hoenig* alone. Judgment was rendered in accordance with the prayer of the complaint, and the defendants appeal. The case was tried by the court. The facts were not seriously in dispute, and were in brief as follows: August 24, 1912, one John Donovan, the plaintiff's intestate, and *Hoenig* made a written contract by which *Hoenig* agreed to sell and convey by good and sufficient deed to the intestate a residence property in Brillion, and the intestate agreed to pay $1,450 therefor, of which $50 was paid down and the balance was to be paid August 30th. The property consisted of two adjoining parcels, which, however, formed but one residence property and constituted the homestead of *Hoenig.* Both parties supposed that *Hoenig* had perfect title, and the time between the making of the contract and the payment of the money was apparently allowed so that an abstract might be obtained. On

August 30th the parties met at the defendant bank to complete the transaction. The intestate had his purchase money with him, but an examination of the abstract showed, and it is admitted, that *Hoenig* had no marketable or record title to a part of the premises called the "Bruss lot." One Barnard had conveyed it to *Hoenig,* but there was no deed on record from Bruss (in whom the record title appeared to be) to Barnard. Mr. Dawson, the cashier of the bank, drew up a deed of the lands. It was signed by *Hoenig* and wife, and it was then agreed by all parties that the bank should hold both the money and the deed and that the money should be paid over to *Hoenig* when "he shall clear the title to property conveyed under warranty deed of even date herewith. . . . Said sum to be held on deposit in this bank until the time specified. If unable to clear within a reasonable time the above mentioned sum shall be returned to said John Donovan." The words quoted are taken from the receipt which the cashier gave to Donovan at the time. It is claimed by the appellant that the ' evidence shows that the deed was at this time actually delivered to and accepted by Donovan so that title passed. The circuit judge found, however, that while the deed was probably in Donovan's hands at some time during the transaction at the bank, it was never delivered to nor accepted by Donovan in the legal sense, and this seems probable from the fact that, owing to the defect in the title, Donovan was not willing to pay the consideration, and at Dawson's suggestion the arrangement was made that Donovan should be protected by the depositing of both deed and money with the bank to await the clearing of the title. It was supposed by both parties that an unrecorded deed from Bruss to Barnard was in existence and could be at once obtained from Mrs. Barnard, and the title cleared in a day or two. After diligent search, however, no deed was found, and the whereabouts of Bruss were unknown. Donovan wished possession of the premises as early as September 6th and made frequent inquiries as to the clear-

ing of the title, but received no satisfaction, except that it would soon be cleared. On inquiry information was received by *Hoenig's* attorneys that Bruss had died, leaving as his heirs a brother, residing in the state of Washington, and a sister, residing in Wisconsin, and an action to quiet the title was commenced October 19, 1912, against these heirs, in which judgment was rendered November 21, 1912, quieting the title and declaring it to be in *Hoenig*. Donovan, tired of waiting for the clearing of the title, in September talked with both *Hoenig* and the bank about the matter, but was assured that the difficulty would soon be cleared up. About October 7th he demanded the return of his money from both *Hoenig* and the bank, but was refused by both. This action was commenced November 16, 1912. Both defendants answered on the merits, claiming that the money in fact was the money of *Hoenig,* and *Hoenig* counterclaimed for specific performance of the contract. The court found that *Hoenig* had no marketable title to the Bruss lot August 30th, nor at the time of the commencement of this action; that the judgment in the action to quiet title did not invest him with a marketable title because there was no competent evidence to show that Bruss was dead, or that the defendants in that action were his only heirs; that *Hoenig* did not even have title by adverse possession at the time of the commencement of the action; that *Hoenig* failed to clear the title within a reasonable time under the circumstances, and hence that the plaintiff was entitled to recover his money with interest from August 30, 1912, and with costs against the defendant *Hoenig* alone.

*J. E. McMullen,* for the appellants.

For the respondent there was a brief by *Hougen & Brady,* and oral argument by *A. L. Hougen.*

WINSLOW, C. J. It being undisputed that *Hoenig* did not have a marketable title to the Bruss lot when the contract was made, there are but four propositions which are deemed nec-

essary to decide in this case, and they may be briefly stated as follows:

1. There is sufficient evidence to sustain the finding that the deed in question was never delivered to or accepted by the plaintiff's intestate.

2. Under the circumstances shown, more than a reasonable time had elapsed before the commencement of this action in which to perfect the title to the property in question.

3. The title not having been perfected within a reasonable time, the intestate was entitled to refuse to accept the deed and to recover back not only the money deposited in the bank, but the $50 paid to the defendant *Hoenig*.

4. Interest should not have been allowed on the money deposited from August 30th, because it is manifest that the intestate had no right to the return of the money until the "reasonable time" had elapsed within which it was understood that *Hoenig* was to perfect the title. It is not easy to say just when the reasonable time elapsed. It seems evident that it ought not to be held to have elapsed prior to the first week in October, and even after that time there was evidently considerable negotiation between the parties, and it seems quite certain that if the title could have been then made good the deed would have been accepted. Under the circumstances the only satisfactory course seems to be to allow interest on the $1,400 only from November 16th, the date of the commencement of the action. The judgment must be modified as of the date of its rendition by deducting therefrom $17.50, and as so modified affirmed, with costs.

*By the Court.*—It is so ordered.